J-A31034-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| S.L.L. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| K.N.D. | |
| Appellee | No. 923 MDA 2014 |

Appeal from the Order entered May 1, 2014
In the Court of Common Pleas of Adams County
Civil Division at No: 10-S-372

BEFORE:  BOWES, OTT, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 12, 2015**

Appellant S.L.L. (Father) appeals from the May 1, 2014 order of the Court of Common Pleas of Adams County (trial court), which denied his petition to modify Appellee K.N.D.'s (Mother) periods of custody of L.E.L. (Child), born August 11, 2009.  For the reasons set forth below, we affirm.

The facts and procedural history underlying this custody dispute are uncontroverted.[1]  Father initiated this case by filing a complaint seeking shared physical and legal custody of Child.  In the complaint, Father alleged that Child was born out of wedlock and had lived with Mother since his birth. Father also alleged that, on July 5, 2009, prior to Child's birth, the parties had entered into a written agreement to share physical custody of Child.

_____

[1] Unless another source is cited, the facts are taken from the trial court's Pa.R.A.P. 1925(a) Opinion, 6/17/14, at 1-9.

Following a custody conference, on April 14, 2010, the trial court issued an order granting shared legal custody of Child to both parents, primary physical custody of Child to Mother, and partial physical custody of Child to Father on alternating weekends and at such other times as the parties mutually agree.

On November 1, 2010, Father petitioned the trial court to modify the April 14, 2010 custody order. In his petition, Father alleged the parties had been following an agreed-upon custody schedule that granted Father more custody time than the April 14, 2010 order. Father also requested primary physical custody of Child. In addition, Father asked the trial court to direct Mother to discontinue posting pictures of Child and referring to Father on Facebook and other social networking sites. Father also asked the trial court to direct Mother to provide him with Child's social security number and health insurance information. Prior to trial, the parties entered into an agreement, providing Mother and Father with shared legal and physical custody of Child on an alternating weekly schedule. The trial court memorialized the parties' agreement in its January 21, 2011, order.

On September 16, 2011, Father petitioned the trial court to modify the January 21, 2011 custody order. Father alleged he had sent Mother a notice of his intention to relocate to which Mother replied that she did not oppose the relocation to East Berlin so long as the custody schedule remained in full force and effect with custody exchanges occurring in Gettysburg. Following a custody conference and by agreement of the parties, the trial court issued

an order on October 17, 2011, indicating Mother's consent to Father's relocation to East Berlin and reflecting the parties' continued agreement to share physical custody of Child on an alternating weekly schedule.

On January 23, 2013, Father filed a petition for contempt and modification of the October 17, 2011 custody order. Father requested that the trial court hold Mother in contempt of its October 17, 2011 custody order for enrolling Child in daycare without Father's knowledge or consent and failing to return Child to Mother's residence so that Father could pick up Child as provided by the custody order. Father also requested the court hold Mother in contempt for making derogatory comments about Father in the presence of Child and on Facebook, exiting her vehicle during a custody exchange, working seven days in a row, refusing to allow Father to spend time with Child while Mother worked, posting photographs of Child on Facebook, and repeatedly arriving late for custody exchanges. Father sought modifications to the October 17, 2011, custody order to the extent he requested the trial court prohibit Child from spending time at Mother's boyfriend's house, allow Mother to enroll Child in daycare at a mutually agreeable location halfway from the parties' homes, prevent Child from handling snakes, require Mother to obtain an evaluation of Mother's boyfriend to determine if he is a threat to Child, and order that Child has no contact with Mother's boyfriend in the meantime.

On March 19, 2013, the trial court held a custody hearing at which Mother acknowledged contempt of its October 17, 2011 order. Specifically,

Mother admitted to, *inter alia*, posting pictures of Child on Facebook, making disparaging remarks about Father in the presence of Child and on Facebook, exiting her vehicle during custody exchanges, and giving Father the finger during a custody exchange. As a result, the trial court adjudicated Mother in contempt and directed her to pay $750.00 to Father. The $750.00 included a $500.00 fine and attorney's fees of $250.00. With respect to the modification portion of Father's petition, the trial court declined to alter the custody order. Instead, it continued the shared physical custody arrangement on an alternating weekly schedule.

On November 15, 2013, Father filed the instant petition for contempt and modification of the March 19, 2013 custody order. Father alleged that Mother violated the order by posting a picture of Child on her Facebook page, making derogatory comments about Father in the presence of Child, failing to give Father an opportunity to spend time with Child on Wednesday evenings and Sundays when Mother was working,[2] and altering a written authorization to prevent Father's fiancée from picking up Child at the daycare. As a result, Father requested that the trial court allow him to exercise custody on alternating Wednesdays and Sundays when Mother was working, and direct Mother to sign all necessary daycare-related

---

[2] The March 19, 2013, order provided in part: "[i]n the event that either party is unable to exercise custody for more than five (5) hours during their period of custody, they will notify the other party and given them the opportunity to exercise custody." Trial Court Order, 3/19/13, at ¶ 20.

authorization documents to allow Father, his fiancée and his mother to pick up Child at the daycare. In addition, Father requested that the court order Mother to reimburse Father for $1000.00 in attorney's fees.

Following the withdrawal of Mother's counsel, the trial court scheduled a hearing on Father's petition for January 23, 2014. On January 22, 2014, the trial court rescheduled the hearing for March 3, 2014. On February 26, 2014, Attorney Katrina Luedtke entered her appearance on Mother's behalf, and Mother filed an answer to Father's petition. Mother also filed a counterclaim for modification of the March 19, 2013, custody order. In her counterclaim, Mother requested, *inter alia*, that the trial court permit her to enroll Child in the Fairfield Area School District Kindergarten for the 2014-2015 school year. Father answered Mother's counterclaim, denying, among other things, that it was in Child's best interests to attend Fairfield Area School District. Father also reiterated his intention to exercise custody of Child on Wednesdays and Sundays because, in so doing, Father would have primary physical custody of Child. As a result, Father indicated he would be permitted to enroll Child in the Bermudian Springs School District.

At the March 3, 2014 proceeding, the trial court did not hold a custody hearing. After additional delays, however, the trial court finally scheduled a hearing for April 16, 2014, at which both parties presented testimony. Following the hearing, on April 16, 2014, the trial court issued an order holding Mother in contempt of its March 19, 2013 order for making disparaging and inappropriate remarks about Father in the presence of Child.

The trial court, therefore, ordered Mother to pay Father's attorney's fees in the amount of $950.00 and a fine of $500.00.

Regarding the custody portion of the pleadings, the trial court stated on the record that (1) Mother and Father would continue to share physical custody of Child, (2) Child would attend the Fairfield Area School District, and (3) the parents would attend co-parent counseling. The trial court also outlined several details for the new custody order. The court further directed the parties' attorneys to prepare a new custody order reflecting the court's decision.

On April 30, 2014, Father's attorney indicated to the trial court that the attorneys were unable to provide the requested order because of Father's intention to appeal some aspects of the trial court's April 16, 2014 order.[3] The trial court issued an order on May 1, 2014, memorializing its April 16, 2014 ruling with respect to physical custody. In particular, the trial court ordered, *inter alia*, shared physical custody would continue and that Child would attend Fairfield Area School District. The trial court reasoned it selected Fairfield Area School District, in which Mother resides, over "Bermudian Springs School District because the custody schedule has Mother with 7 overnights preceding the school day and Father 3 of such overnights[.]" Trial Court Order, 5/1/14, at ¶ 16. Finally, explaining why it

---

[3] The docket indicates Father did not appeal from the trial court's April 16, 2014 order holding Mother in contempt and imposing sanctions.

chose to continue the shared physical custody arrangement, the trial court remarked:

> [T]he parties have had shared equal physical custody of [Child] since at least October of 2011, [and Child] appears to be thriving[.] [G]iven that factors 2, 2.1, 6, 7, 14, 15 and 16 [of 23 Pa.C.S.A. § 5328(a)] do not apply, and that all remaining applicable factors indicate no advantage to either parent, the result is that there is no reason to change the current custody schedule.

*Id.* On May 29, 2014, Father timely appealed to this Court. Following Father's filing of a Pa.R.A.P. 1925(a)(2)(i) and (b) statement of errors complained of on appeal, the trial court issued a Rule 1925(a) opinion. Applying the Section 5328(a) custody factors, the trial court concluded the parties should continue to share custody of Child, "who appears to be thriving under this [arrangement]." Trial Court 1925(a) Opinion, 6/17/14, at 19-20. The trial court also reiterated its reasons for choosing Fairfield Area School District over Bermudian Springs School District. Specifically, the trial court explained under the existing custody arrangement that the parties have been following for at least the last three years, "Mother would have custody on seven of the overnights preceding school days and Father would have three such overnights. [The trial court] chose the school district of the parent who has more than twice as many school mornings to contend with than the other parent." *Id.*

On appeal, Father raises six issues for our review:

> 1. Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in determining that factor (1) set forth in 23 Pa.[C.S.A. §] 5328(a) presented "no advantage to either parent;" when Mother:" (1) testified at the hearing that she preferred that [Child] spend time with maternal grandfather

- 7 -

rather than Father and [sic]; and (2) testified at the hearing that she followed through on her stated preference from March 2013 until February 2014 by allowing maternal grandfather to care for [Child] while she worked during her periods of custody (nearly every alternate Wednesday evening and Sunday) rather than allow Father to spend this time with [Child] as required by the March 2013 [o]rder[.]

2.     Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in determining that factor (4) set forth in [Section 5328(a)] presented "no advantage to either parent" when Mother: (1) works in Maryland; (2) is in the process of getting engaged to her boyfriend who lives in Maryland; (3) the [t]rial [c]ourt previously allowed Mother to enroll [Child] in daycare in Maryland; and (4) Mother previously advised Father that she intended to move to Maryland to live with her boyfriend[.]

3.     Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in determining that factors (8) and (13) set forth in [Section 5328(a)] presented "no advantage to either parent" when Father presented evidence that: (1) Mother has been using vulgar language directed toward him in the presence of [Child] for nearly three (3) years; (2) Mother previously admitted that she was in contempt of the October 2011 [o]rder for making disparaging remarks about Father in the presence of [Child] and giving Father "the finger" in the presence of [Child]; and (3) Mother was adjudicated in contempt at the time of the April 2014 hearing for making disparaging remarks about Father in the presence of [Child.]

4.     Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in determining that factors (9) and (10) set forth in [Section 5328(a)] presented "no advantage to either parent" when Mother chose to work rather than spend time with [Child] during her periods of custody on nearly every alternate Wednesday evening and Sunday from March 2013 until February 2014[.]

5.     Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law in determining that the parties should continue with shared equal physical custody  when both parents testified to a high level of conflict, both parents testified to an inability to communicate on even basic parenting issues, Father and his fiancée testified that Mother continuously uses profanity and screams at Father during custody exchanges, and Father and his fiancée testified that Mother continuously attempts to interfere with Father's (or his fiancée's) ability to pick [Child] up at daycare[.]

6.     Whether the [t]rial [c]ourt abused its discretion and/or committed an error of law by excluding [Father's] [e]xhibits 10 and 11 and/or prohibiting Father from calling Kevin Hyland, a representative of Applebee's, who prepared [Father's] [e]xhibit 10 and [e]xhibit 11, to authenticate these exhibits so that Father could use them to prove that Mother worked during her periods

of physical custody on alternate Wednesday evenings and Sundays from March 2013 through February 2014.

Father's Brief at 4-5. Father essentially challenges the trial court's determination on custody factors 1, 4, 8, 9, 10, 13 and 16 of Section 5238(a) and the trial court's decision to exclude exhibits 10 and 11 at trial.

We address Father's claims mindful of our well-settled standard of review.

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a).

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and

which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).[4]

_____

[4] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S.A. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Because
*(Footnote Continued Next Page)*

We begin our analysis by addressing Father's evidentiary argument that the trial court abused its discretion in excluding Father's trial exhibits 10 and 11 and preventing Father from calling Kevin Hyland (Hyland), a representative of Applebee's, to testify for purposes of authenticating the exhibits. Although Father challenges the trial court's exclusion of the exhibits in the question presented section of his brief, he fails to do the same in the argument section. *See* Pa.R.A.P. 2119. In fact, the argument section of his brief is bereft of any argument as to why the trial court abused its discretion in excluding the trial exhibits. Rather, Father argues only that the trial court abused its discretion in disallowing Mr. Hyland to authenticate the exhibits. As such, we limit our discussion of Father's evidentiary claims only to this issue.

In support of his argument that the trial court abused its discretion in disallowing Mr. Hyland to testify, Father points out that Mr. Hyland would have testified that "he prepared [exhibits 10 and 11]." Father's Brief at 18. Father further argues that had the trial court permitted Mr. Hyland to testify, Father would have been allowed to "testify as to which hours Mother worked during her periods of physical custody on alternate Wednesday evenings and

*(Footnote Continued)* _____

Father's petition to modify was filed prior to the effective date of the subsection, the subsection does not apply to the present case. *See* § 6 of Act of December 18, 2013, P.L. 1167, No. 107, effective 1/1/14.

Sundays from March 2013 through February 2014." *Id.* We, however, find this argument to be without merit.

Here, because Father does not argue any basis on which the trial court abused its discretion to exclude exhibits 10 and 11 at trial, we discern no reason to question the trial court's decision to disallow the testimony of Mr. Hyland. More important, as Father admits in his brief, Father offered the testimony of Mr. Hyland only to authenticate exhibits 10 and 11, whose exclusion he fails to challenge on appeal. Accordingly, the trial court did not abuse its discretion in barring Father from calling Mr. Hyland to testify.

Nonetheless, assuming Father properly had challenged the exclusion of the exhibits, we still would conclude the trial court did not abuse its discretion. The exhibits, if they had been admitted into evidence, would have been cumulative. *See* Pa.R.E. 403. Our review of the hearing transcript indicates that Father testified as to precisely the same facts for which Father sought to introduce the exhibits. That is, Father testified Mother worked on the days she had custody of Child. Specifically, Father testified on direct-examination:

> I stopped down to Applebee's to find her car in the parking lot and her inside working on several Sundays and also several Wednesdays when she was supposed to have [Child].
>
> . . . .
>
> I would be down [at Applebee's] after 9 o'clock when she should have been home with [Child], Sundays mainly.

N.T. Hearing, 4/16/14, at 29-30. Moreover, Father's attorney cross-examined Mother on this subject. *See id.* at 60-61, 71. Although Mother

acknowledged Father visited her employment location, she disputed the frequency of such visits by remarking "not as often as he just stated." **Id.** at 61. Also, Mother denied she violated the March 19, 2013, order by working longer than five hours on days when she had custody of Child. **Id.** Given the parties' testimony, the trial court did not abuse its discretion in excluding exhibits 10 and 11. We note the trial court found "[b]y the time of trial the information in the exhibits was irrelevant because in fact Mother was not working on Sundays. And even if she had been, she made appropriate child care arrangements during her work hours." Trial Court 1925(a) Opinion, 6/17/14, at 18.

We now turn to Father's argument that the trial court abused its discretion on custody factor 1 of the Section 5328(a), which relates to "[w]hich party is more likely to encourage and permit frequent and continuing contact between the child and another party." 23 Pa.C.S.A. § 5328(a)(1). In this regard, Father argues that factor 1 favors him because Mother did not provide him an opportunity to exercise custody over Child on certain Wednesday evenings and Sundays when she was working at Applebee's. Father's Brief at 13. Rather, Father argues, Mother chose maternal grandfather over him to look after Child. **Id.**

Based on our review of the record, we agree with the trial court's conclusion that factor 1 does not favor either parent. As the trial court found:

> Father suggests . . . there was an example of Mother not
> being the accommodating parent, specifically not encouraging or

permitting frequent and continuing contact between [Child] and Father. Father's example is Mother's response to Father's attorney's repetitive questioning about Mother preferring [Child] have time with maternal grandfather rather than with Father. In the context of that questioning, Father's attorney was inquiring about Mother's work schedule and why she would work instead of wanting to be with [Child], and Mother explained that she was attempting to earn additional income in order to better provide for [Child]. During these periods of employment, [Child's] caregiver was maternal grandfather.

At some point during the proceedings, Mother offered to meet Father half-way on school mornings and assist in the transportation of [Child] to school from Father's residence for mornings following overnights at Father's residence preceding a school day. That is hardly an offer made by someone who is not an accommodating parent.

Trial Court 1925(a) Opinion, 6/17/14, at 12-13. Because there is record evidence tending to be in favor of and against either parent on this factor, and because we defer to the trial court with respect to the weight of the evidence, we discern no reason to reverse the trial court's ruling on factor 1.

We next address Father's argument that factor 4 of Section 5328(a), which pertains to "[t]he need for stability and continuity in the child's education, family life and community life," favors him. Specifically, Father argues Mother would not provide stability and continuity to Child because Mother resides in her father's home and eventually intends to relocate to Maryland to be with her boyfriend. Father's Brief at 14. By comparison, Father argues he meets the requirements of factor 4 because "[he] has owned his own home in a gated community for nearly three (3) years, worked the same work schedule at L.B. Ford for more than one year, and was engaged to be married in May 2014." *Id.* at 15. Based on our review

of the record, however, we agree with the trial court's determination on this factor. The trial court noted:

> Father indicates that at one time Mother, who works in Maryland, advised Father that she intended to move to Maryland to live with her boyfriend. [The court] assumes that Father somehow thinks this means that Mother's living situation is not as stable as that of Father's. *Mother in fact did not move to Maryland and instead resides in Fairfield, Adams County, Pennsylvania, area. Both parties stipulated that the living facilities of the other parent were satisfactory.*

Trial Court 1925(a) Opinion, 6/17/14, at 14 (emphasis added). Accordingly, the trial court did not abuse its discretion in ruling that factor 4 favors neither parent.

Father next argues that the trial court abused its discretion with respect to factor 8, relating to attempts of a parent to turn the child against the other parent, and factor 13, relating to the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. Concerning factor 8, the trial court explained:

> Father claims that somehow [factor 8] favors [him] because Mother has used vulgar language towards Father in the presence of [Child] for nearly three years. Father's assertion is not related to [factor 8]. There is nothing in the record to suggest that either parent has tried to turn [Child] against the other parent.

Trial Court 1925(a) Opinion, 6/17/14, at 15. Explaining its determination on factor 13, the trial court noted:

> [Father] suggests that Mother's vulgar language toward him gives Father an advantage under [factor 13]. It is correct that Mother has used inappropriate language toward Father in the presence of [Child] and the March 19, 2013 [o]rder of [trial court] acknowledged her contempt for that conduct and sanctioned her $750.00, calculated as a $500.00 fine and $250.00 toward attorney's fees. On April 16, 2014, [the court] again found Mother in contempt for making disparaging or inappropriate remarks with regard to Father in the presence and

> hearing of [Child], and ordered her to pay attorney's fees in the amount of $950.00 and pay a fine of $500.00 for a total of $1450.00. What Father is complaining of is a contempt issue[.]

*Id.* at 17. As the trial court noted, and our review of the record confirms, Father did not present any evidence at the hearing, nor does he point to any in his brief, that Mother attempted to turn Child against him. In fact, the trial court is correct in concluding that, under the circumstances of this case, Father's arguments in support of factors 8 and 13 are reserved appropriately for a contempt proceeding.[5] Accordingly, we do not find the trial court abused its discretion in concluding that factors 8 and 13 do not favor either parent.[6]

Father also argues that factors 9 and 10 of Section 5328(a) favor him contrary to the trial court's determination that they do not favor either parent. Factor 9 relates to "[w]hich party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs," 23 Pa.C.S.A. § 5328(a)(9), and factor 10 pertains to "[w]hich party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." 23 Pa.C.S.A. § 5328(a)(10).

---

[5] As mentioned earlier, to the extent Father attempts to challenge any aspect of the April 16, 2014 contempt order, such challenges are waived because Father failed to appeal from the order within 30 days.

[6] To the extent there is a high level of conflict between the parents, the trial court ordered the parties to participate in co-parent counseling. *See* Trial Court Order, 5/1/14, at ¶ 14.

Here, Father argues that factors 9 and 10 favor him because Mother chose to work alternate Wednesday evenings and Sundays instead of caring for Child. We disagree. As the trial court aptly stated "Father suggests that because Mother chose to earn additional income by working extra hours that [factors 9 and 10 favor] Father. *There is no connection* between Mother's working extra hours and [factors 9 and 10.]" Trial Court 1925(a) Opinion, 6/17/14, at 15 (emphasis added). According, we discern no abuse of discretion.

Citing factor 16 of Section 5328(a) (catchall provision), Appellant finally argues the trial court abused its discretion by continuing to direct the parents to share physical custody of Child. Appellant argues:

> At [t]rial, both parties testified to a high level of conflict, both testified to an inability to communicate on even basic parenting issue, Father and his fiancée testified that Mother continuously uses profanity and screams at Father during custody exchanges, and Father and his fiancée testified that Mother continuously attempts to interfere with Father's (or his fiancée's) ability to pick [Child] up at daycare. Under these circumstances, the [t]rial [c]ourt should not have ordered a shared arrangement.

Father's Brief at 17. Father also cites our decision in **Hill v. Hill**, 619 A.2d 1086 (Pa. Super. 1993) for the proposition that "'in order to support a decision of shared custody, the court must make a determination that the parties are capable of cooperating, even minimally.'"[7] Father's Brief at 18 (internal citation omitted).

_____

[7] In **Hill**, we held that shared custody is appropriate where: (1) both parents are capable of providing love and making reasonable child rearing decisions; (2) both parents demonstrate a desire to remain a part of the child's life; (3)

*(Footnote Continued Next Page)*

Here, despite Father advancing his preferred version of the facts, our review of the records reveals no evidentiary support to sustain Father's argument that the parties are unable to cooperate minimally. Therefore, we agree with the trial court "[t]here was no information produced at trial suggesting that the [shared equal physical custody] schedule should be changed." Trial Court 1925(a) Opinion, 6/17/14, at 20. The trial court, however, tacitly found a major source of discontent between the parties was Mother's decision to enroll Child in her school district, *i.e.*, Fairfield Area School District. **See id.** at 19-20. Nevertheless, because the underlying concern in any custody proceeding is the best interest and welfare of the child, and the trial court specifically found that Child "appears to be thriving" under the shared physical custody arrangement, **id.** at 20, we find the trial court did not abuse its discretion in concluding factor 16 favored neither parent. We, therefore, conclude the trial court did not abuse its discretion in continuing to order shared physical custody of Child.

Order affirmed.

*(Footnote Continued)* ─────────────

the child sees each parent as a source of security and love; and (4) the parents can manage a minimal amount of cooperation. **Id.** at 1088 n.1.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2015